IN THE MATTER OF THE CONTESTED SENATORIAL
ELECTION, FIRST SENATORIAL DISTRICT.   H.
L. HOLSTEIN, Petitioner.   ALEX. YOUNG, Respond-
ent.   ALEX. YOUNG, Petitioner.   H. L. HOLSTEIN,
Respondent.

ELECTION CONTEST.

SUBMITTED FEBRUARY 28, 1896.        DECIDED MARCH 6, 1896.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE CARTER, SITTING IN
PLACE OF WHITING, J., ABSENT FROM ILLNESS.

(1) Upon a petition and answer in a contested election case putting
in issue all ballots cast, the court will examine all such ballots
and declare, in compliance with Article 40 of the Constitution, who
is elected.

(2) A ballot marked with a cross by the voter, not in the space provided
for such cross, but in the square where the candidate's name is
printed, should be rejected.

(3) A ballot upon which the voter wrote the candidate's name instead
of making a cross should be rejected.

(4) A ballot upon which appears several straight marks preceding the
cross should be rejected.

(5) Ballots marked with a cross substantially though not entirely within
the prescribed space should be counted.

(6) A ballot containing a mark evidently the result of an accident in
the printing office, and not likely to attract attention, should not
on that account be rejected.

(7) A number of ballots were objected to because the crosses made
by the voter were imperfectly drawn, in some instances the lines
being repeated, and in others not straight. All of them appeared

to be honest efforts to make the prescribed cross, and not for the purpose of enabling the ballot to be distinguished. *Held*, they should be counted.

(8) Where a number of ballots objected to as not complying with the law, if counted or rejected, would not change the result, the court declined to consider them.

### OPINION OF THE COURT BY JUDD, C.J.

The election in question, a special one ordered by the Minister of the Interior to fill a vacancy caused by the resignation of Charles Notley, Senator of the First Senatorial District, was duly held on the 6th January last. The proper officer made return to the Minister of the Interior that the election resulted in a tie, each of the two candidates, H. L. Holstein and Alexander Young, receiving the same number of ballots, to wit, 127.

A petition was filed by said H. L. Holstein in this court, within the statutory time of thirty days after the election, claiming that two illegal ballots had been cast and counted for said Alexander Young in precinct four of said district, and praying that the decision of the inspectors of the precinct where the alleged illegal ballots were cast counting them for said Alexander Young, be reversed and that the said ballots be declared illegal and void and that the petitioner be declared the duly elected Senator for said Senatorial District.

The opposing candidate, Alexander Young, thereafter but within the statutory time, filed his petition to this court, alleging that some ten illegal ballots had been cast in the various precincts of the district for said H. L. Holstein, and that there were some ballots legally cast for said petitioner Young that were unlawfully rejected, as an examination of the ballots cast at the election will disclose, and praying that the illegal ballots cast for Young and rejected by the inspectors be counted and that the petitioner be declared the duly elected Senator for said Senatorial District. All the inspectors of election of the district, the opposing candidate and the Minister of the Interior had notice of the petition and appeared waiving summons and submitting to the order of the court.

The said Alexander Young thereafter answered the petition of H. L. Holstein and alleged that ten ballots cast for Holstein were illegal and that Holstein should not have these counted for him, and that therefore he should not be declared elected and his petition should be dismissed.

At the day set for hearing Mr. Thurston, counsel for H. L. Holstein, moved that the court either proceed to look into the whole question as to who was elected Senator at said election, on the petition of H. L. Holstein and the answer of Alexander Young, or postpone the hearing until the petition of Alexander Young be returnable. That the court should not consider each petition and answer separately, but hear both petitions together and determine upon all the ballots legally cast who was elected Senator.

Messrs. Kinney & Ballou contended that the sole question before the court was whether Young had received credit for two illegal ballots and if so, whether Holstein had not received ten illegal ballots which would show that he was not elected, and therefore his petition should be dismissed. That the court should confine itself to the exact issues raised by the petition and answer, and that Holstein's petition was not sufficient upon which to warrant the court to proceed with an examination as to who was elected Senator.

We held on the 21st February that as both petitions alleged that certain illegal votes were cast at the election, the consideration of the first petition should be postponed until the return day of the second petition and that then the court would hear both petitions and their respective answers together.

On the 27th February Mr. Holstein filed his answer to Mr. Young's petition, alleging and specifically designating many more illegal ballots that were counted for Mr. Young and praying the court to cause an examination and recount of the ballots, and to decide which of the two candidates was elected.

On the return day of Mr. Young's petition (February 28th) counsel for Mr. Young objected to the court's receiving in evidence ballots cast at any precinct not mentioned in the plead-

ings in Mr. Holstein's petition and answer; that Holstein should not be granted affirmative relief unless he appears entitled to it upon his own petition filed within thirty days after the election and the pleadings thereunder. Under a specific allegation, the proofs must be limited to it.

Mr. Thurston argued in reply: Article 40 of the Constitution makes it obligatory upon the court in case an election is legally contested to decide first, whether a legal election has been held and, second, who was elected. Upon Mr. Holstein's petition, it making a *prima facie* case in his favor, two illegal ballots being counted for Mr. Young, and the election having been declared a tie on the Sheriff's canvass, the whole case is opened to the court to decide who was elected as Senator.

Upon this point we hold as follows: Article 40 of the Consituation which reads, "In case any election to a seat in either house is disputed and legally contested, the Supreme Court shall be the sole judge of whether or not a legal election for such seat has been held; and, if it shall find that a legal election has been held, it shall be the sole judge of who has has been elected," was designed to remove from the jurisdiction of either house of legislature and to transfer to the Supreme Court all questions as to the validity of any disputed or contested election, and all questions as to which candidate was legally elected. Its object was to remove all these exciting questions from the domain of partizan feeling and transfer them for settlement to a judicial tribunal.

For centuries in England, and for a lesser time in the United States and in these islands, constitutions have prescribed that each house of legislature should be the sole judges of the qualifications of its members. The surrender of this important jurisdiction to the court does not necessarily imply that the strict rules of pleading and of admission of evidence adopted in civil actions should control in election contests. These contests are not strictly *inter partes.* The people have an interest in them and the burden is cast upon the court of ascertaining, if possible, who was the choice of the people for the particular office as

expressed legally by their votes.    The main object of the contest must not be lost sight of.    It is to ascertain who is legally elected.    When an election is contested the petitioner should state sufficiently the grounds of attack so as to apprise all parties interested of its real nature.    But looseness and indefiniteness of pleading which might prejudice parties by surprise should not be allowed.    In the case before us all the pleadings, consisting of Holstein's petition and Young's answer in the first case, and Young's petition and Holstein's answer in the second case, raise all the objections by either of the parties (candidates) to the ballots claimed to be illegal.    And in Young's petition not only are a number of ballots objected to as illegal and particularly described, but he alleges that many other illegal ballots were cast for Holstein at said election, and that ballots legally cast for Young were rejected, "as will more fully appear by an examination of the ballots cast at the said election."    And Holstein, in his answer to this petition, also asks for a recount of all the ballots cast, and prays the court to decide which of the said candidates was elected.    Thus all the ballots cast at the election are put in evidence by both Young's petition and Holstein's answer.    As held in *Cuisick's Election*, 136 Penn. St. 476, a party who puts in evidence all the ballots cast at the election for the purpose of supporting his allegation of illegal ballots cast for his opponent cannot "utilize so much of this evidence as will serve his turn and reject the remainder."    Thus, if we confine ourselves to the strict rules of practice in civil actions we are authorized to pass upon all the ballots cast, whether to the advantage or disadvantage of either party.    And by Article 40 of the Constitution we are required to decide upon the pleadings and evidence before us who is legally elected.

We have examined the various ballots objected to by both parties and heard arguments upon their legality.

Four ballots were cast for Alex. Young, numbered by the Clerk of the Court as Exhibits 21, 22, 24 and 38, in which the cross (x) made by the voters was placed in the space in which

the name of the candidate appeared, and not in the space provided for the mark. The statutes applying are as follows: Section 90 of the Laws, Rules and Regulations for Holding Elections, which reads:

"The names of the candidates shall be placed upon the ballot in alphabetical order.

"A horizontal line shall be ruled between each name and its equivalent, if any, and the next name.

"Immediately after all the names, on the right hand side of the ballot, a vertical line shall be ruled, so that, in conjunction with said horizontal lines, a rectangular space shall be enclosed opposite each name and its equivalent, if any, of sufficient size to give ample room in which to designate the choice of the voter in the manner herein prescribed.

"All of the names upon a ballot shall be placed at a uniform distance from the left hand edge thereof, and close thereto."

And Section 100 id., which reads:

"A voter shall designate his choice for Senators by making a cross, thus (x) on the right hand side of the ballot, in the space or spaces provided for such purpose, opposite the name or names of the candidate or candidates for whom he desires to vote."

The ballots so marked are clearly illegal and should be rejected.

Ballot Exhibit 26 was not marked with any cross, but had the name "Alex. Young" written in pencil in the space provided for the mark, and should be rejected. This makes five ballots cast and counted for Alex. Young which are illegal and should be rejected.

Ballot Exhibit 41 was marked in the space provided for the mark opposite the name of H. L. Holstein, as follows:

"- - - X." This should be rejected as being in violation of the third paragraph of Section 108 of the rules, etc., id. which reads:

"If a ballot contains any mark or symbol whereby it may be identified, or any mark or symbol contrary to the provisions

hereof  *  *  *  *  then such ballot and all it contains must be rejected."

The three short marks immediately preceding the cross and having no connection with it are "marks or symbols" whereby the ballot may be identified, which is forbidden by the law.

Before considering further the numerous other objections that have been made to various ballots, we find the law to be that the main object of the present system of voting is to secure secrecy of the ballot. Various provisions of law are enacted so that no one but the voter shall know for whom he votes, unless he shall thereafter disclose it. The provisions in respect to the place of affixing the mark, the character of the mark, and that no other mark or symbol shall be made upon the ballot, are designed to secure such uniformity in appearance that any particular ballot cast shall not be distinguished and identified. We regard all these provisions as mandatory, but whether in any particular case they will be held to be fatal to the validity of the vote must depend upon the particular character of the variation from the statute requirement. An honest attempt at making the cross prescribed by the statute, though imperfectly executed, which is apparently due to want of skill, or awkwardness in the use of the pencil, imperfect eyesight, or nervous trembling of the hand, should not be rejected. The law should be construed, if possible, so as not to disfranchise the voter. A large number of the ballots cast are imperfectly marked. In some cases the voter was apparently not certain that his strokes of the pencil were sufficiently plain, and repeated them. Some ballots were marked with trembling hands, and the crosses are irregular, but we find none of them made with any design to have them identified thereafter. They were all counted for the candidates whose names are opposite them. We hold that none of them should be rejected.

A few ballots have the crosses very near, and in some instances touching or intersecting the lines or the extension of the lines enclosing the spaces provided for the voters' marks for the respective candidates. But as these are substantially within the

spaces provided for the mark, and the voters' choice readily appears, we do not reject any of them.

On the lower part of one ballot, Exhibit 5, cast for Mr. Holstein, there is a short red line. Judging from the appearance of the line, and from the nature of the fluid which made the line, and which is apparently the red-colored adhesive matter used for sticking the ballots together in blocks, it is obvious that the existence of the line on the ballot is the result of accident in the printing office. It would not be likely to attract the attention of a casual observer. Such being its character, we do not reject it.

There remain two classes of objections. We can see no difference in principle between them; they must stand or fall together.

In one precinct all of the six "specimen" ballots required by law (Section 81 of the Rules, etc.) to be posted, three outside the polling room and three in the voting compartments, were handed to voters and duly marked by them, cast and counted by the inspectors. These were all marked and counted for H. L. Holstein. There were also seventeen ballots which on their face showed that they were not properly folded as required by Section 96, which reads as follows:

"Before delivering a ballot to a voter the inspectors shall fold it twice; first across the middle so as to form a rectangle, and again in the same manner and in the same direction, and in such manner as to conceal the contents thereof."

These ballots bear creases showing where they were folded, and they were only folded once, and not twice in the same direction. Of these, ten were marked, cast and counted for Alexander Young, and seven for H. L. Holstein. One hundred and twenty-seven (127) ballots in all were counted for Alexander Young. Deducting the five (5) ballots which we have above rejected from this number, will leave one hundred and twenty-two (122) votes for Mr. Young.

One hundred and twenty-seven ballots were counted for H. L. Holstein. Deducting the one for him which we have above rejected will leave him one hundred and twenty-six (126) votes.

Now, if the improperly folded ballots counted for Young, ten in number, were rejected, it will leave 112 votes for him. If the seven (7) improperly folded ballots cast for Holstein were deducted from his 126 it will leave him 119, and if the six "specimen" ballots cast for Holstein are deducted he will have 113 votes, a majority of one over Young. Rejecting all the improperly folded ballots and "specimen" ballots from the number cast severally for both candidates will not change the result.

Holstein will still have a majority of one. Counting the specimen ballots for Holstein he would have a majority of seven. For this reason we do not find it necessary to the decision of this case to make any ruling whether these last classes of ballots should or should not be counted.

The following cases are referred to:

6 Am. & Eng. Enc. of Law 349.
*Phelan v. Walsh*, 62 Conn. 260.
*Parker v. Orr*, 41 N. E. Rep. (Ill.) 1002.
*Pennington v. Hare*, 62 N. W. Rep. (Minn.) 116.
*Vallier v. Brakke*, 64 Ib. (S. D.) 180.
*Whittam v. Zahorik*, 59 Ib. (Ia.) 57.
*Ellis v. Scott*, 61 Ib. (Mich.) 648.
*Buckner v. Lynip*, 41 Pac. Rep. (Nev.) 762.
*Kirk v. Rhoads*, 46 Cal. 399.
*Rutledge v. Crawford*, 91 Ib. 526.
*Sego v. Stoddard*, 136 Ind. 297.
*Curran v. Clayton*, 86 Me. 42.
*Taylor v. Bleakley*, 28 L. R. A. (Kans.) 683.
*Bowers v. Smith*, 111 Mo. 45.
*Ackers v. Howard*, L. R. 16 Q. B. Div. 739.
*In re Paikuli*, 8 Haw. R. 680.
*Mattoon v. Barnard*, 8 Haw. R. 732.
*In re J. N. Kapahu*, 8 Haw R. 735.

We hereby render judgment that H. L. Holstein was duly elected Senator for the First Senatorial District at the special election held January 6, 1896. Costs divided.

*Hartwell, Thurston & Stanley*, for petitioner.
*Kinney & Ballou*, for respondent.