T. W. HARVEY *et al.*

*v.*

THE COUNTY OF COOK.

*Opinion filed April 17, 1906.*

1. ELECTIONS—*proposition to adopt amendment to Torrens Land law should be printed at top of regular ballot.* The provision of section 2 of the act of 1903 to amend the Torrens Land law, requiring the clerk, when the question of the adoption of the amendment is to be voted on, to cause the proposition "to be printed at the top of the ballots to be used at said election" is mandatory, and the use of a separate ballot therefor is unauthorized, even though there are other public questions to be voted upon which require the use of a separate ballot.

2. SAME—*when election to adopt amendment is void.* An election to adopt the amendment of 1903 to the Torrens Land law is void where the proposition is not printed at the top of the ballot, above the names of the candidates to be voted for, but in second place upon a separate ballot containing four other propositions.

3. SAME—*the form prescribed for presenting question to voters must be followed.* Printing the word "yes" after the words "For extension of Torrens land title system" and the word "no" after the words "Against extension of Torrens land title system," instead of leaving the spaces following the two propositions entirely blank, as shown in the form prescribed by the statute, renders the negative of the proposition ambiguous and is in plain disregard of the statute.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

HERRICK, ALLEN, BOYESEN & MARTIN, for appellants:

The disregard by the election officers of the requirements of the act as to the method of submitting the question to a vote of the people of the county invalidated the election. *Union County* v. *Ussery,* 147 Ill. 204; *Gaston* v. *Lamkin,* 115 Mo. 20; *State* v. *Seibert,* 116 id. 415; *State* v. *McMillen,* 108 id. 153.

All the material provisions of an election law must be substantially complied with or the election will be void. *McSorley* v. *Schroeder,* 196 Ill. 99; *Webster* v. *Gilmore,* 91 id. 324; *Murphy* v. *San Luis Obispo,* 119 Cal. 624; *People* v. *Hanson,* 150 Ill. 122; *San Luis Obispo* v. *Fitzgerald,* 126 Cal. 279.

HARRY A. LEWIS, WM. F. STRUCKMANN, and CHARLES G. LITTLE, (JOHN BARTON PAYNE, and SIGMUND ZEISLER, of counsel,) for appellee:

The disregard, if any, by the election officers of the requirements of the act as to the method of submitting the question to a vote of the people of the county did not invalidate the election.

The non-compliance with the provisions of an election law, whether such provisions be material or not, does not necessarily cause the election to be void. *Bowers* v. *Smith,* 17 S. W. Rep. 761; *Piatt* v. *People,* 29 Ill. 54; *Lee* v. *State,* 49 Ala. 43; *DuPage County* v. *People,* 65 Ill. 360; *Hodge* v. *Linn,* 100 id. 397.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellants, five electors of the county of Cook, filed their petition in the circuit court of Cook county to contest the result of the vote at a general election held in the county of Cook on November 8, 1904, on the question of the adoption of an act in force July 1, 1903, entitled "An act to amend sections seven (7) and eighteen (18) of an act entitled 'An act concerning land titles,' approved and in force May 1, 1897." An amended petition was filed, to which the appellee filed an answer, and upon a hearing the court entered a decree dismissing the petition. The petitioners below have perfected an appeal to this court.

The original act, entitled "An act concerning land titles," (Hurd's Stat. 1897, chap. 30, par. 44, p. 399,) was adopted by the county of Cook at an election held in November, 1897, and has from thence hitherto been in force in said Cook county, during which time 1508 titles have been registered in said county. At the general election held in said Cook county on November 8, 1904, the question of the adoption by the people of that county of an act entitled "An act to amend sections seven (7) and eighteen (18) of an act entitled 'An act concerning land titles,'" (Laws of 1903, p. 121,) was submitted to the electors of said county of Cook. Two forms of ballots were printed and provided by the election authorities to be used at said election,—one the regular ballot containing the names of all the candidates nominated and to be voted for at said election, the other a separate ballot for the submission of the questions of the adoption of a proposed constitutional amendment, the adoption of the amendment to the Torrens land law, the proposed issuance of Cook county bonds, and three questions of public policy. On the 26th day of November, 1904, the votes cast at said election having been counted, the election authorities declared that the majority of the votes cast on the question of the adoption of the amendment to the act concerning land titles were in favor thereof. The official

election returns showed that at said election 400,923 regular ballots and 300,899 separate ballots were cast, and that the vote on the question of the adoption of the amendment to the act entitled "An act concerning land titles," was 241,924 for and 30,043 against the adoption.

Appellants' contention is, that substantial requirements of the act prescribing the manner of preparing the ballots to be voted on the question of the adoption of the act at said election were ignored and disregarded; that such requirements were mandatory, and that therefore there had been no valid adoption of the said amendment. They insist that the election commissioners, in submitting the question of the adoption of said amendment to the people, should have printed the proposition so to be voted upon, upon the regular ballot, and not, as was done, on the separate ballot; that the proposition should have been printed at the top of the ballot, above the names of the candidates for official positions to be voted for at the same election; and also insist the form of the submission of the proposition fixed by the statute was disregarded.

Section 2 of said amendatory act is as follows: "The provisions of this act shall not apply to land in any county, where the act of which this act is an amendment has been adopted, until this act shall have been adopted by a vote of the people of the county, at an election to be held on Tuesday next after the first Monday in November, or any election for the election of judges of the year in which the question is submitted. The question may be submitted in the following manner: In any county of the first or second class, as the same are classified in the act concerning fees and salaries, on the petition of not less than one-half of the legal voters, to be ascertained by the vote cast at the last preceding election for county officers, or in any county of the third class upon petition of not less than twenty-five hundred (2500) legal voters praying the submission of the question of the adoption of this act, the clerk shall give notice that

such question will be submitted at such election, and shall cause to be printed at the top of the ballots to be used for said election:

| | |
|---|---|
| For extension of the Torrens land title system | |
| Against extension of the Torrens land title system | |

"The votes cast upon that question shall be counted, canvassed and returned as in the case of the election of county officers. If the majority of the votes cast on that subject shall be for extension of the Torrens land title system, this act shall thereafter be in force, and apply to lands in that county. If the majority of the first submission is not in favor of such extension, the question shall not be again submitted before the second year thereafter."

_First_—Appellee denies the first proposition contended for by appellants, and insists that the particular form of submitting the question to be voted on, provided by said section 2, was properly placed on the separate ballot under the terms of section 16 of the election laws, (Hurd's Stat. 1903, par. 303, p. 867,) and that the regular ballot provided for by section 14 of that act was not the proper ballot on which to submit the question to the voters. As to the other contentions of the appellants, the appellee insists the requirements of said section 2 of the proposed amendment were substantially complied with and that greater strictness was not essential.

The legislature, by said section 2 of the amendment, above set out in full, provided expressly a method for the submission of the question of the adoption of said amendment, and unless the positive and material provisions of that section have been complied with, the election as to the adoption of the amendment must be held void. Said section 2 provides that it shall not apply to the land in any county "until this act shall have been adopted by a vote of the people of the county, at an election to be held on Tuesday next after the first Monday in November, or any election for the

election of judges of the year in which the question is submitted," and that the clerk "shall cause to be printed at the top of the ballots to be used for said election" the particular form prescribed therein. At all of the elections at which the said amendment could be voted upon and adopted, the regular ballots containing the names of the candidates to be voted for, provided for by said section 14 of the general election laws, would be used, while the separate ballot provided for by said section 16 of the general election laws "whenever a constitutional amendment or other public measure is proposed to be voted upon by the people," might or might not be used at such election.

But the appellee says a separate ballot was necessary for the several propositions voted upon at the election held in November, 1904, and that, said separate ballot was as much "the ballots to be used" as the one containing the names of the candidates. True it is that it so happened that at this particular election a separate ballot was required and used, but the fact still remains that the separate ballot might not have been necessary at the said election, nor will it necessarily be used at any future election at which the same question may be presented to the voters of the various counties in the State. Had there been no other proposition than the question of the adoption of this amendment presented to the voters of Cook county at the election in November, 1904, could it be seriously contended by appellee that the question could have been placed on a separate ballot, and that such separate ballot would have been "the ballots to be used" at that election, within the meaning of the terms of said section 2 of the amendment? The clause in said section 2, "and shall cause to be printed at the top of the ballots to be used for said election," refers to and means some particular ballot that will be used at any election at which the question of the adoption of this act could be voted upon, and not to any ballot that might or might not be used. The fact that a separate ballot presenting other measures happened to be

necessary at this election could not change the ballot upon which the legislature intended the question of the adoption of the amendment should be placed, nor could the express and positive provision of the statute be ignored and disregarded merely because at this election the separate ballots were to be used.

It is insisted in the brief for the appellee that "it must be assumed that the legislature was cognizant of section 16 of the general Election law providing for the separate ballot, and that in the absence of any language showing a clear intent that a different method should be employed the ballot intended was a separate ballot." It is also to be assumed that the legislature was cognizant of section 14 of the same law providing for the regular ballot, and that the legislature knew that the ballot provided for by said section 14 would be used at each and every election at which said section 2 provided the question of the adoption of the amendment to the Torrens land law could be voted upon, and that the ballot provided for by said section 16 might or might not be used. Therefore the more logical and more reasonable conclusion would seem to be, that the legislature, by using the words "the ballots to be used," meant the ballots that would be used, and not the ballots that might be used. Moreover, said section 2, in providing the manner in which the proposed amendment should be submitted, prescribes a particular form in which the question shall be printed on the ballot, apparently inconsistent with and in many respects different from the form provided to be used in the separate ballot prescribed by said section 16. We think that the clear and positive language of said section 2 clearly shows that the legislature intended that the question should be submitted to the voters by being printed on the regular ballot.

Chief Justice Cooley, in the case of *Hoyt* v. *City of East Saginaw,* 19 Mich. 39, said: "The duty of the courts is to examine the statute carefully, with a view to giving the legislative intention effect; and they ought to sustain defective

proceedings only in those cases where it is fairly inferable that they observe that intent more nearly by sustaining them than by setting them aside on account of the omitted formality."

"By the weight of authority a failure to comply with the provisions of the law in conducting an election, if the error or irregularity is a matter of substance, will render the election void or be grounds for rejecting the returns from the particular precinct." (10 Am. & Eng. Ency. of Law,—2d ed.—690.)

That the placing of the proposition to be voted upon, upon a ballot other than the one provided for by law and in total disregard of the clear and positive enactment of the statute is a matter of substance, cannot be denied.

*Second*—The amendment expressly provided that the form therein prescribed should be printed at the top of the ballots. That requirement was not complied with. On the separate ballots six propositions were printed. The first or top one was the question of a proposed constitutional amendment. The second was the question under consideration, which was followed by the four remaining questions. The appellee insists that the difference between the first and second place upon the ballot was so slight that substantially the whole object sought by the legislature was accomplished. If there had been but two propositions printed on the separate ballot, the difference between the two would have been just as slight and the proposition would have been as near the top as it was in this case, and yet it would have been at the bottom of the ballot and the last question to come to the attention of the voter. We are impressed with the view that the position at the top of the ballot, above the names of the candidates for the various offices to be voted for, was prescribed by the legislature for the reason it was believed that by so doing the attention of voters would be attracted to the proposition and they thereby induced to vote for or against it.

*Third*—The proposition was not only in the second place on the ballots, but the form prescribed for presenting the question to the voters was disregarded. The form provided for by said section 2 of the amendatory act was as follows:

| For extension of the Torrens land title system | |
|---|---|
| Against extension of the Torrens land title system | |

In the form used in the separate ballots the commissioners of the election caused to be inserted in the blank spaces to the right of the two alternative statements of the proposition, in the first and upper space the word "Yes" and in the space beneath the word "No," and then added two other spaces to the right of those words in which the voter could indicate his vote. The form, in its altered condition, was as follows:

| For extension of the Torrens land title system | Yes | |
|---|---|---|
| Against extension of the Torrens land title system | No | |

A vote in the blank opposite the word "Yes" would clearly have been a vote in the affirmative, while a vote opposite the word "No" would at most be nothing more than an expression of the voter that he was not against extension of the Torrens land title system. There was no clear and unmistakable way of voting against this proposition. Fairness and equal opportunity to all voters to express their choice required that a vote in the negative could be as clearly and certainly indicated as could a vote in the affirmative. That could not be done.

In *Murphy* v. *City of San Luis Obispo*, 119 Cal. 624, an ordinance submitting to the voters the question of issuing municipal bonds, provided that the voter should indicate his vote by writing "Yes" or "No" opposite the proposition voted upon. The ballots contained a notice, "To vote for or against a proposition, place an X in the square at the right." Many of the voters complied with the notice instead of the

direction in the ordinance, and the election was held void. The court said: "The only safe rule is to hold the specific directions to be mandatory, and that the manifest disregard of them by the voter renders his vote nugatory. The notice which was printed upon the tickets that were used by the voters, 'to vote for or against a proposition, stamp an X in the square at the right,' was unauthorized, and gave to the voters no right to disregard the manner of voting which was directed by the ordinance calling the election. That direction in the ordinance was clear and unambiguous, and it must be held that as it was disregarded the election was invalid."

This court, in *People* v. *Hanson,* 150 Ill. 122, held that a ballot cast at an election to organize certain territory as a village, which read, "Against corporation," was not as it stood entitled to be counted on the question of incorporation, where the statute provided that the ballots should be "For village organization under the general law" or "Against village organization under the general law."

The positive provisions of said section 2 in regard to the manner of placing the proposition of the adoption of the amendment before the voters were in no way complied with but were all grossly disregarded. We cannot resist the conclusion that the proposition should have been placed upon the regular ballot and at the top thereof, and that by placing it upon the separate ballot, and by the ambiguous wording of the negative of the proposition, the vote on the question of the adoption of the amendment to the Torrens law is illegal.

The judgment appealed from must be and is reversed and the cause will be remanded, with directions to enter a decree in pursuance to the prayer of the petition.

*Reversed and remanded, with directions.*