(No. 11788.—Judgment affirmed.)

THE PEOPLE *ex rel.* C. C. Mattingly *et al.* Appellees, *vs.*
ALEXANDER SNEDEKER, Appellant.

*Opinion filed February 20, 1918.*

1. QUO WARRANTO—*information against a single highway com-
missioner may question the existence of the office.* An information
against a highway commissioner charging him with usurping the
office of single commissioner of highways may question the legal
existence of the office on the ground that the single highway com-
missioner system was not established by a legal election.

2. ELECTIONS—*section 161 of Road and Bridge law, as to form
of ballots for single highway commissioner system, is mandatory.*
Section 161 of the Road and Bridge law of 1913, as to the form of
ballots in submitting the proposition for adopting the single high-
way commissioner system, is mandatory in requiring the submis-
sion of the proposition both for and against the system, and is not
satisfied by the single proposition, "For Single Highway Commis-
sioner System."

3. SAME—*section 14 of the Ballot law, as to printing on outside
of ballots, is mandatory.* Section 14 of the Australian Ballot law,
providing what shall be printed on the outside of ballots so as to
appear when folded, is mandatory and must be followed at elec-
tions for voting on the proposition for or against the single high-
way commissioner system.

APPEAL from the Circuit Court of Edgar county; the
Hon. JOHN H. MARSHALL, Judge, presiding.

A. B. GARRETT, and V. V. RARDIN, for appellant.

W. H. HICKMAN, State's Attorney, S. W. KINCAID,
S. I. HEADLEY, and FRANK T. O'HAIR, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the
court:

This is a proceeding in the nature of *quo warranto*
charging appellant with usurping the office of single com-
missioner of highways in the town of Buck, in Edgar
county. On a hearing in the trial court the issues were

found in favor of appellees and judgment of ouster was rendered against appellant. This appeal followed.

Several pleas were filed by appellant to the information and replications were filed to some of these pleas. After the pleadings were at issue the case was tried by the judge, a jury being waived.

The facts admitted by stipulation on the trial below were substantially as follows: That February 13, 1917, a special election for the purpose of voting on the question of a single highway commissioner system in Buck township was held at the town hall in the town of Buck; that a proper petition had been filed with the town clerk requesting him to call this special election within the statutory time; that a proper notice of said election was given by the clerk; that the polls were opened at the time required by the statute; that an election board according to the statute was present and received the votes; that 273 persons appeared to vote whose names were on the poll-book and who placed their legal, illegal or alleged to be legal ballots in the box; that after the polls were closed there were found to be 273 ballots within the box, either legal, illegal or alleged to be legal; that upon the count by the clerks the judges found and declared that 136 votes had been marked "yes" and 133 votes marked "no;" that there were four votes not counted by the judges; that two of these four ballots had no mark whatever on them; that one of the ballots had a cross in the square after the word "yes" and a cross in the square after the word "no;" that the fourth ballot had a cross over the word "system" but no cross in the square after "yes" or "no;" that on the two ballots which had no mark on them no attempt had been made to make a cross at any place on the face or back of the ballot but all four had the initials of the judges who handed the ballot to the voter; that afterwards Alexander Snedeker was duly nominated for the office of single highway commissioner for the town of Buck, and on April 3, 1917, an election was held at said town house

whereat Snedeker received 176 votes and the only opponent 141 votes; that Snedeker was declared elected by the judges and by the canvassing board and filed his oath of office and bond with the town clerk within the statutory time.

Counsel for appellant contend that the real purpose of this proceeding is to declare the election for organizing said single highway commissioner system illegal, and that this cannot be done by *quo warranto* proceedings, citing *People* v. *Whitcomb,* 55 Ill. 172, and High on Ex. Legal Remedies, sec. 618. The information in this case alleges the usurpation of a franchise, right or privilege exercised through Snedeker, and does not make the commissioner district a party, and does not allege, in terms, that the district was illegally organized. In discussing the proper allegations in an information of this character, this court said in *People* v. *Rodenberg,* 254 Ill. 386, on page 389: "If the object of the information is to question the legal existence of a corporation, body or thing to which the office pertains, the information is to be filed against the individual assuming to hold and exercise the duties and powers of the office. If the information alleges the usurpation of a franchise, right or privilege exercised through individuals as officers, it is not necessary to make the inconsistent allegation that the office exists." The information in this last case challenged the existence of the court, which was characterized as a pretended court, and called upon the respondent to show by what warrant he claimed to exercise the powers of a judge of a court having no legal existence.

In *Hinze* v. *People,* 92 Ill. 406, this court said (p. 413): "The statute provides that the writ shall lie as well where any person unlawfully holds or executes any office or franchise as where any person shall usurp or intrude into any office or franchise. If the law by which it is claimed the office is created is invalid and of no effect because in contravention of the constitution, any person who assumes to hold or execute such office must necessarily do so unlaw-

fully and therefore come literally within the language of the statute,—that is, 'unlawfully hold and execute such office.' Whether there can, legally speaking, be a usurpation or intrusion when there is no lawful office is not, therefore, a material inquiry. Although there may have been no unlawful usurpation or intrusion, there was an unlawful holding and executing of an office if the law by which it is claimed to have been created is unconstitutional." In the *Hinze case* the information alleged that there was no law authorizing the office.

In a *quo warranto* proceeding brought against certain persons claiming to be drainage commissioners of Union Drainage District in DuPage county, those persons were ousted and deprived of their office upon a finding by the court that the district was illegally organized. The information contained two counts, the first count challenging the organization of the district. (*People* v. *Gary,* 196 Ill. 310.) See, also, to the same effect, *People* v. *Weber,* 222 Ill. 180, where the illegality of the office was first raised in the replication. The fact that the legality of the office was not alleged in the information was not raised in any pleading of the respondent.

Under the above authorities it is clear that the information contained allegations which justified the court in taking jurisdiction in this matter in *quo warranto* proceedings.

We do not deem the authorities relied on by counsel for appellant on this question in point. In *People* v. *Whitcomb, supra,* the question attempted to be raised by *quo warranto* was to test the constitutionality of an act of the legislature which proposed to extend the territorial limits of the city of Morrison, in this State, and the court there said that the question attempted to be improperly raised was whether the city officers could enforce ordinances and levy and collect taxes in the territory annexed by said act when it is claimed that such act was unconstitutional and void, and it was there held that the writ could not be employed to restrain an offi-

cer from exercising power not conferred upon him or in territory in which he was not authorized to act. It is largely on the doctrine laid down in that case that the text relied on in High on Extraordinary Legal Remedies is based. We do not think anything is said in these authorities that in any way conflicts with the rulings of this court in the cases heretofore cited where *quo warranto* proceedings were allowed to oust a person or persons from illegally or unlawfully holding and executing an office that did not exist.

It further appears from the pleadings and the admissions in the record that at the election at which the proposition was submitted the wording of the proposition was, "For Single Highway Commissioner System," while section 161 of the Road and Bridge law of 1913 requires that the ballots to be used at such election shall be in the following form: "For Single Highway Commissioner System;" "Against Single Highway Commissioner System." (Hurd's Stat. 1916, p. 2296.) Under the rulings of this court in construing similar statutes as to the form of ballots to be used in voting, we think it must be held that these ballots for the organization of this district were improperly worded and for that reason the district was not legally organized. This provision of section 161 of the Road and Bridge law as to the form of the ballot is mandatory. *Harvey* v. *Cook County*, 221 Ill. 76; *People* v. *Hanson*, 150 id. 122; *People* v. *Sullivan*, 247 id. 176.

Section 14 of the Australian Ballot law provides, among other things, that "on the back or outside of the ballot, so as to appear when folded, shall be printed the words, 'Official Ballot,' followed by the designation of the polling place for which the ballot is prepared, the date of the election and a *fac-simile* of the signature of the clerk or other officer who has caused the ballots to be printed." (Hurd's Stat. 1916, p. 1181.) It appears from the record before us that no such printing was on any of the ballots which were cast as to the adoption of the highway commissioner system. As

we deem this provision mandatory with reference to the ballots cast at such election, it must be held that this election was invalid for this reason also.

As this decision on these two points disposes of the case, it is unnecessary to consider or decide the question whether the proper number of votes were counted in order to declare the election carried.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*