The People of the State of Illinois ex rel. Birel Milburn et al., Appellants, v. E. Perry Huston et al., Appellees.

Gen. No. 8,610.

filed April 27, 1932.   Rehearing denied October 4, 1932.

CHARLES F. TYM, State's Attorney, WILBER H. HICK-MAN and CRAIG & CRAIG, for appellants.

O'HAIR & McCLAIN and VAN SELLAR & McCLAIN, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The appellants filed a petition for leave to file an information in the nature of quo warranto charging that E. Perry Huston usurps the office of mayor of the City of Paris and that Joseph Haase, Frank E. Morrison, Henry F. O'Bannon and Earl Thomas, each respectively, usurps the office of commissioner of said city. Respondents filed written objections to the allowance of the prayer of the petition which objections were supported by five affidavits. The objections were overruled by the court and the information was filed. Respondents, who are appellees on this appeal, have assigned cross errors to the effect that the court erred in granting leave to file the information. Affidavits in support of such objections do not become a part of the record unless preserved by a bill of exceptions which was not done in this case and therefore this court is precluded from reviewing the action of the court in overruling said objections and granting leave to file the information and the cross errors are consequently overruled.

It is alleged in the petition for leave to file the information that the election by which respondents claim to hold their offices, as mayor and commissioners respectively, was void for two reasons: (1) that neither on the back nor outside of any of said ballots, so as to

appear when folded, nor at any other place on said ballots, was there printed or written the designation of the polling place for which the ballot was prepared, and for that reason none of said ballots complied with the election laws in force in said City of Paris but were each and all illegal and invalid and said election was therefore wholly null and void, and that the said returns on said election and canvass thereof were based upon said illegal and invalid ballots; (2) that none of said ballots were printed upon plain white paper through which the writing or printing could not be read nor upon plain, substantial white paper, but each and all of said ballots were printed upon unsubstantial, thin and flimsy white paper through which the writing or printing could be read and so transparent that the printing and marks in front of the names of the candidates on said ballots could be seen and read through the back of the ballot without holding the same up to the light and could be seen and read by merely looking at the back of each ballot, when said ballot was folded, for what candidate it was marked by the voter, contrary to the election laws in force in said city and for that reason said ballots were illegal and the election was wholly null and void, etc. To the information itself pleas of justification were filed by the respondents to the effect that they held their respective offices by reason of the fact that they had received a majority of the votes cast at said election, that they had each qualified as such officers, and were now, and had since such qualification, been acting as such. To these pleas appellants filed two replications substantially following the averments of the petition for leave to file the information; one in regard to the failure of the ballots to have printed or designated thereon the polling place where such ballots were to be used and the other in regard to the failure to have said ballots printed upon substantial white paper in

the manner prescribed by the statute. Respondents demurred to these replications and appellants moved to carry the demurrer back to the pleas. This motion was overruled, the demurrer sustained to the replications and judgment rendered in favor of respondents accordingly.

It is averred in the petition for leave to file the information, in the pleas of respondents and in the replications thereto that the City of Paris duly adopted the commission form of municipal government in the year 1915 and that said election was held April 21, 1931, while said city was operating thereunder.

There are but two fundamental questions involved in this case and they are whether section 14 of the Australian Ballot Law, adopted in 1891 (paragraph 216, ch. 46, Cahill's Ill. Rev. Stat. 1929) applies to general elections for the mayor and commissioners in cities which have adopted the commission form of municipal government and, if so, whether the provisions for the preparation of the ballots set out therein are mandatory or directory. This section is as follows: ". . . On the back or outside of the ballot, so as to appear when folded, shall be printed the words, 'Official Ballot,' followed by the designation of the polling place for which the ballot is prepared, the date of the election and a fac-simile of the signature of the clerk or other officer who has caused the ballots to be printed. The ballots shall be of plain white paper, through which the printing or writing cannot be read."

The act specifically applies to municipal elections. Section 1 provides: "That in all elections hereafter to be held in this State for public officers, except for trustees of schools, school directors, members of boards of education, officers of road districts in counties not under township organization, the voting shall be by ballots printed and distributed at public expense

as hereinafter provided, and no other ballots shall be used.''

Section 2 provides: ''The printing and delivery of the ballots and cards of instruction to voters hereinafter described, shall, in municipal elections in cities . . . be paid for by the several cities. . . . The term 'city election' shall apply to any municipal election held in a city, village, or incorporated town.'' The purpose of the act is shown by its title: ''An Act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot.'' The act is general in its scope, and embraces, controls and applies to substantially all elections of public officers in the State and unless the act providing for the commission form of government for cities passed in 1910 specifically exempts the election of the officers of cities which have adopted that act from the provisions of the Australian Ballot Act by providing other methods of conducting elections of its municipal officers, and particularly in regard to the preparation of the ballots, it will apply to and control the elections in cities which have adopted the commission form of government.

The only provisions in the act providing for the commission form of government which are pertinent to the issues under consideration are found in sections 18 and 19 thereof. Paragraph (e) of section 18, Cahill's St. ch. 24, ¶ 340, is as follows: ''All general and special municipal elections in said city or village shall be held, conducted and contested under the election law in force in such city or village, except that the contest of the election of mayor and commissioners shall be had, prosecuted and conducted in the County or Circuit Court. The council hereunder shall not be the judge of the election and qualification of its mem-

bers." It is provided in section 19: "The said ballots shall be printed upon plain, substantial white paper, and shall comply with the election laws in force in such city or village, except as herein otherwise provided, and shall be headed: . . . Such ballots shall be authenticated and attested on the back thereof in the same manner and form as provided by the election law in force in such city or village." Cahill's St. ch. 24, ¶ 341.

The pleadings show that the only law enacted by the City of Paris in regard to the election of the mayor and commissioners was an ordinance designating the polling places for the election and the appointment of the judges and clerks thereof and it is contended that as the act creating the commission form of government provided that all municipal elections in a city which had adopted that act shall be held and conducted under the election laws in force in such city, such elections will not be controlled by the general election laws of the State but only by such laws as the city may itself have enacted by ordinance. We cannot agree with this proposition. It will not be presumed that the legislature intended to give such municipalities the power to repudiate the general election laws of the State passed to protect the sacredness and privacy of the ballot and, in our opinion, such cities would have no power to adopt any laws in regard to the election of its officers which would be at variance with the public policy of the State as announced by its enactments in regard to general elections. The general election laws, at least in so far as the provisions therein in regard to the preparations of the ballot are concerned, apply to the election of officers of municipal corporations which have adopted the commission form of government the same as they do to the election of all other public officers in this State.

The remaining question which presents itself for consideration is whether the provisions of section 14 of the Australian Ballot Law, Cahill's St. ch. 46, ¶ 216, which provides that on the back of the ballot, so as to appear when folded, shall be printed the designation of the polling place for which the ballot is prepared and that such ballots shall be printed on plain white paper through which the printing or writing cannot be read, are mandatory or merely directory. The demurrers to the replications admit that there was no designating of the polling places on the ballots for which the ballots were prepared and that the same were printed on paper through which the printing and writing could be easily read. It has been held in a great many cases in this State that a mere irregularity in the manner prescribed by the statute for holding an election, where no fraud or other harm has been shown and no legal voter had thereby been deprived of his vote, will not avoid an election. *People v. Graham,* 267 Ill. 426 (and cases cited). In this case it is also held: ''A mandatory provision in a statute is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding. Directory provisions are not intended by the legislature to be disregarded, but where the consequences of not obeying them in every particular are not prescribed the courts must judicially determine them. In doing so they must necessarily consider the importance of the punctilious observance of the provision in question to the object the legislature had in view. If it be essential it is mandatory. (2 Lewis' Sutherland on Stat. Const. —2d ed.—sec. 610.) No universal rule can be given to distinguish between directory and mandatory provisions. The controlling question in this as in all other rules of construction is, what was the intention of the

legislature? Whether a statute is mandatory or directory does not depend upon its form but upon the legislative intention, to be ascertained from a consideration of the entire act, its nature, its object and the consequences which would result from construing it one way or the other." If it is apparent that it was the intention of the legislature that the things prescribed to be done in the preparation of the ballot shall be mandatory then a violation of the act in this regard renders an election void regardless of all other considerations. Section 26 of the Ballot Law, Cahill's St. ch. 46, ¶ 229, among other things provides: "No ballot without the official indorsement shall be allowed to be deposited in the ballot-box, and none but ballots provided in accordance with the provisions of this Act shall be counted." In the case of *People v. Bushu,* 288 Ill. 277, it is held: "While it has frequently been held that mistakes or omissions of the officers in charge of the machinery of an election should not defeat the plainly expressed will of the people at such election, yet such has not been held to be the rule where such officers have failed to perform those duties of precaution which safeguard the votes of the people. It is far better that the people of a town shall lose their vote in a single instance than that there shall be written into the law rules which permit election officers to disregard the plain mandates of those provisions of the law intended to protect and safeguard the ballot. A provision requiring the fac simile of the signature of the town clerk or other officer who prepares the ballots is to prevent the fraudulent casting of spurious or illegal ballots. That provision is mandatory, and ballots which do not contain such fac simile are illegal ballots." In *People v. Snedeker,* 282 Ill. 425, it was held: "Section 14 of the Australian Ballot law provides, among other things, that 'on the back or outside of the ballot, so as to appear when folded, shall be printed

the words, ''Official Ballot,'' followed by the designation of the polling place for which the ballot is prepared, the date of the election and a fac-simile of the signature of the clerk or other officer who has caused the ballots to be printed.' (Hurd's Stat. 1916, p. 1181.) It appears from the record before us that no such printing was on any of the ballots which were cast as to the adoption of the highway commissioner system. As we deem this provision mandatory with reference to the ballots cast at such election, it must be held that this election was invalid for this reason also.'' In the case of *People v. Illinois Cent. R. Co.,* 298 Ill. 516, it appeared that there was no designation of the polling places printed on the ballots where they were to be used and the court held: ''The notice of the special town election specifically stated that the election would be held at two polling places, describing them. Both the polling places were used at said election and separate returns were made for each.

''Section 14 of the Australian Ballot law (Hurd's Stat. 1917, p. 1345) provides that certain things shall appear on the outside of the ballot to be voted at such an election, followed by the designation of the polling place for which the ballot is prepared, the date of the election and a fac simile of the signature of the clerk or other officer who has caused the ballots to be printed. *There was no attempt to designate on the back of these ballots the two separate polling places.* The ballots used, as we understand the record, in both places were identical, without reference as to which was to be used in the respective polling places. Section 26 of the Ballot law provides that 'no ballot without the official indorsement shall be allowed to be deposited in the ballot-box, and none but ballots provided in accordance with the provisions of this act shall be counted.' Under the holding of this court these sections of the Australian Ballot law are mandatory. (*People v.*

*Snedeker,* 282 Ill. 425; *People v. Bushu,* 288 id. 277.) It follows that none of the ballots cast at this special election either for the taxes or the bond issue were valid, and therefore neither tax can be sustained as legally authorized." This case is directly in point and conclusive. In so far as we have been able to discover it has been held, in every case where the question has come before a court of review, that the provisions of section 14 of the Ballot Law in regard to the preparation of ballots are mandatory and that elections held with ·ballots not conforming to the conditions prescribed by said section are illegal and void. While nothing in the record in this case shows that any fraud was practiced or that any voter lost his vote by reason of the defective ballots, yet, as it was said in *People v. Bushu, supra,* "It is far better that the people of a town shall lose their vote in a single instance than that there shall be written into the law rules which permit election officers to disregard the plain mandates of those provisions of the law intended to protect and safeguard the ballot."

It follows that the court erred in sustaining the demurrers to the replications and the judgment of the circuit court is therefore reversed and the cause remanded with directions to carry the demurrers back to the pleas of the respondents and sustain them thereto.

*Reversed and remanded with directions.*