MARTIN *v.* PORTER.

(No. 75-598—Decided January 28, 1976.)

Common Pleas Court of Richland County.

*Mr. William Owens* and *Mr. Richard Hendricks*, for plaintiff.
*Mr. Terry Kilgore* and *Mr. George Hall*, for defendant.

MAYER, J. At a general election held in Mansfield, Ohio, on November 4, 1975, among the contests was one for the office of mayor of that city. Incumbent mayor, Richard A. Porter, received 6,858 votes, a margin of 17 over the 6,841 received by challenger Dan Martin. An official recount was requested and received by Mr. Martin. No change in the vote was found and the board of elections certified the election results to the Secretary of State. Mr. Martin then filed an election contest in this court under the provisions of R. C. Chapter 3515. Contestant alleged certain irregularities on the part of the board of elections and its employees, relating to the *modus operandi* employed in the absentee voting procedures for the office of Mayor of the city of Mansfield.

Although numerous irregularities were alleged, contestant pointed and fired his heavy artillery at the absentee voting of 42 persons who were patients at Mansfield General Hospital on November 4, 1975, and at 25 specific applications of other absentee voters. In his closing argument counsel for contestant, as this court recalls, stated that the primary issue this court has to decide was whether the procedures followed by the Richland County Board of Elections and its employees in the handling of the 30 absentee votes which were collected at Mansfield General Hospital on election day were of such an irregular and unlawful nature to require this court to invalidate the election for mayor and require a new election for said office be held at a future date.

Evidence was offered pertaining to the handling of voting procedure on election day with respect to Mansfield General Hospital. Exhibits were admitted concerning procedures with said absentee voting. Very able counsel on both sides of the issue appeared before this court during the progress of this trial and were attentive. Therefore, this court does not deem it necessary to go to any great length to discuss the evidence as all counsel displayed unusual familiarity with facts and details. Evidence reveals contestant was given a publication at the board of elections, commonly referred to as a candidate's guide. The absentee vote totals were 281 for Porter and 134 for Martin.

The basis of this suit is found in R. C. 3515.08 *et seq.*, being the election contest statutes, and unfortunately such statutes do not set forth the specific grounds upon which such an action can be successfully maintained. Consideration of relevant case law becomes very important. All counsel have assisted the court in extensive and able research by way of briefs. And the court has made independent research. Ohio case law reveals a scant number of pertinent cases, some of which were based on out of state cases, some of which, in the opinion of this court, leave much to be desired under the principle of *stare decisis.* However, thorough analysis leads one to the conclusion, in some of the cases, that the court therein basically ruled on the factual background of the case rather than a well-formulated set of laws.

Contestant questions the board's compliance with certain provisions of R. C. Chapter 3509. Contestant prefers to place an interpretation of R. C. 3509.08 to require assistant clerks who voted hospital patients to sign their name on the ID envelope.

It is interesting to note that this section was amended twice in 1974. The first became effective on July 26, 1974 (Senate Bill No. 429), the second became effective September 27, 1974 (House Bill No. 662). This second amendment places the section in its current form. It is the reading applicable to the instant Richland County litigation. Amendments were for the purpose of facilitating absentee voting.

R. C. 3509.08(A), prior to the July, 1974, amendment, was very different in part from that applicable to the instant case. Certain parts were deleted from what is now the law. R. C. 3509.08(B) must not erroneously be applied; the latest amendment is the one applicable to this Richland County case.

Further, this court observes that the official form of the disabled voter's identification envelope does not carry a marked space for such signatures, and the form is marked at the bottom as having originated with the Secretary of State. R. C. 3501.04 names the Secretary of State as the chief election officer in Ohio, and the following section names as one of his duties the providing of necessary forms to a local board of elections.

Procedures used in obtaining applications for absentee ballots from hospital patients and sufficiency of the form is questioned. Upon comparing language of the applicable statute with forms and procedures found from the evidence to have taken place and being in existence, the court finds the statutes were complied with in these respects. Mr. Bricker, Clerk of the Board of Elections, testified he made the determination that eligibility to vote under R. C. 3509.08 (B) was to be controlled by date of admission. Statutes of Ohio give the clerk the duty of establishing to his satisfaction the validity of the circumstances.

From the conclusions I have reached I am of the opinion the ballots cast at Mansfield General Hospital on November 4, 1975, were cast legally and were properly counted by the board of elections. Assuming, contestant's position, and assuming such solely for the purpose of this court's advancement of other reasons applying thereto, that signed applications would have had to be obtained, stating exact nature of the accident or illness for which voter is confined, date of confinement commencement, and so-forth, the election in this particular case would not have been invalidated. It is interesting to note that the things complained of by contestant were not brought to light until after the election was held and the votes were counted. The election being contested is one for an elected office and not one concerning a tax measure.

A case, very persuasive and authoritative to this court, was the litigation commenced by Tom V. Moorehead following an election dispute in Zanesville, Ohio, for the office of mayor. The Ohio Supreme Court holding in *Mehling* v. *Moorehead* (1938), 133 Ohio St. 395, has so impressed Ohio courts since, that the Ohio Supreme Court alone has seen fit to reaffirm or refer to at least one or more parts of the decision in at least six Supreme Court holdings since it was handed down. To this day it stands as the law of Ohio.

It is said at page 403 in that decision:

"Where bonds are to be issued or taxes levied, certain steps in the procedure are conditions precedent to taxing property owners. The failure to take such steps is necessarily fatal. On the other hand, where there is an absence of fraud, a substantial compliance with the statute, and the voters are not misled, the will of the electorate should not be set aside in the selection of the officials of a community. *State, ex rel. Atty. Genl.,* v. *Cogswell,* 8 Ohio St., 620, 628."

And, at pages 406 and 407, in *Moorehead, supra,* there are quite interesting statements and holdings: that the election having been held, should not be disturbed when there was full opportunity to correct any irregularities before the vote was cast; that strictly speaking, all provisions of election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview, but irregularities, which were not caused by fraud and which have not interfered with a full and fair expression of the voters' choice, should not effect a disenfranchisement of the voters; and that where there has been a substantial compliance with the law and no showing that the omission of instructions changed the result in any manner, such provisions of the Charter of Zanesville were to be considered merely directory after the election.

There is no evidence before this court which would justify any finding of fraud. This court finds there was no fraud. The election statutes were substantially complied with. Trends in recent years in election laws has been to enable as many people to vote as possible. Some insinuations were made that the board and employees over-exerted

in getting voter's response at Mansfield General. True, there was a certain effort exerted to get the votes there, but this court would rather see an over-exertion of effort on the part of a board to get out the vote than an under-exertion, particularly where every act appears in good faith and no semblance of fraud being present.

With respect to rules for determining whether a thing is mandatory or merely directory each case must, in many respects, look first to the subject matter, take into consideration the importance of the provision that has been allegedly disregarded, and it must be considered the relation of the provision to the general object intended to be secured by the statute, and in that aspect a decision must be made.

Counsel for contestant cite *Otworth* v. *Bays* (1951), 155 Ohio St. 366. In my opinion this case could not be controlling in the Richland County case. In *Otworth*, some voters, several times in number of the plurality of the winner, were given and cast more than one ballot. This was fraudulent under the existing laws. The court held such fraud could not be rehabilitated and therefore, the court required a new election be held. Where such fraud or irregularities are great and flagrant, as in *Otworth, supra,* the water in the well has been contaminated and poisons the purpose of the election. There was no fraud in the Richland County case.

This court concludes that contestee, Richard A. Porter, is entitled to judgment in his favor entitling him to the full term of the office of mayor of the city of Mansfield, Ohio, to which he was duly and lawfully elected on November 4, 1975.

Exceptions noted.

*Judgment accordingly.*