In the Matter of THIRTY VOTERS OF THE COUNTY OF KAUAI ON BEHALF OF THEMSELVES AND ALL OTHER VOTERS OF THE COUNTY OF KAUAI, Plaintiffs, *v.* NELSON K. DOI, et al., Defendants

NO. 7217

AUGUST 23, 1979

RICHARDSON, C.J., OGATA AND MENOR, J.J., RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE LUM ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* This is an original action seeking to set aside, on the basis of improper ballot and unlawful election procedures, the results of the election held on November 7, 1978, in which an initiative measure limiting the power of the Kauai County planning commission to grant building height variances was narrowly defeated.

The stipulated facts show that, pursuant to the initiative and referendum provisions of the Kauai County Charter, a group calling itself Stop Highrise on Kauai (SHOK) submitted

an initiative proposal limiting the power of the county planning commission to grant height variances to the electorate for the November election after it had failed to gain county council approval. The ballot question, which originally read:

SHALL THE COMPREHENSIVE ZONING ORDINANCE BE AMENDED TO REMOVE FROM THE PLANNING COMMISSION THE AUTHORITY TO GRANT VARIANCES FROM THE BUILDING HEIGHT LIMITS PRESENTLY ESTABLISHED IN THE ORDINANCE?

YES ☐

NO ☐

was drafted by the Kauai County Attorney's office and was approved by SHOK on September 14, 1968. Sometime between September 14 and October 6, however, the language was changed, in compliance with Section 1.07D of the initiative and referendum provisions, so that the voter was asked to choose between "For" or "Against" rather than between "Yes" and "No." The ballot then read as follows:

SHALL THE COMPREHENSIVE ZONING ORDINANCE BE AMENDED TO REMOVE FROM THE PLANNING COMMISSION THE AUTHORITY TO GRANT VARIANCES FROM THE BUILDING HEIGHT LIMITS PRESENTLY ESTABLISHED IN THE ORDINANCE?

FOR ☐

AGAINST ☐

On October 6, the full text of the proposal, and the sample ballot with the amended language, appeared in "The Garden Island," a newspaper of general circulation, and on October 9, official facsimile ballots were made available for public inspection.

On October 11, a SHOK advertising campaign carried on in "The Garden Island" and on two island radio stations, commenced. The next day, October 12, an anti-SHOK organization, calling itself Concerned Citizens for Orderly Growth, initiated a heavy media counter campaign. Public debate was intense. The official election tally shows the measure was defeated by 38 votes. This action followed.

Initially, we note jurisdiction, HRS §§ 11-171, 11-172, 11-174.5; *see also Kahalekai v. Doi,* 60 Haw. 318, 590 P.2d 543 (1979); *Johnson v. Ing,* 50 Haw. 379, 441 P.2d 138 (1968), and that the electorate as a whole has sufficient interest in the outcome of these proceedings to confer standing upon it as a party plaintiff. *Cf. Elkins v. Ariyoshi,* 56 Haw. 467, 527 P.2d 236 (1974); *Akizaki v. Fong,* 51 Haw. 354, 461 P.2d 221 (1969); *Holstein v. Young,* 10 Haw. 216 (1896).

The only issues raised by the parties which merit our consideration are whether plaintiffs are barred by their laches and other conduct from bringing this action, and whether the ballot format and the conduct of defendant Tad Miura, Kauai County Clerk, require the invalidation of the election.

Based on the record before us, we find that plaintiffs' conduct and their failure to bring this action in a timely manner have barred them from suit. The general rule is that if there has been opportunity to correct any irregularities in the election process or in the ballot prior to the election itself, plaintiffs will not, in the absence of fraud or major misconduct, be heard to complain of them afterward. Thus, in *Martin v. Porter,* 47 Ohio Misc. 37, 353 N.E.2d 919 (1976), the Ohio court upheld the validity of a contested mayoral election where the defeated candidate lost by only 17 votes, over an allegation of the use of improper procedures by the election officials in handling the absentee voting. The court assumed, solely for the sake of argument, that the procedure employed was indeed in violation of applicable law, and found that irrespective of such violation, where there is a full opportunity to correct any irregularity before the counting of the votes, an unsuccessful candidate is barred from asserting such irregularity as a basis for subsequently invalidating the election, absent fraud. *See also Nelson v. Robinson,* 301 So.2d

508 (Fla. App. 1974); *Fletcher v. Teater*, 503 S.W.2d 732 (1974); *In re Recall Election in City of Hackensack*, 31 N.J. 592, 158 A.2d 505 (1960); *State v. Elliot*, 17 Wash. 18, 48 P. 734 (1896).

In the instant case, the record before us shows that plaintiffs received constructive notice of the change in the ballot language when the sample ballot appeared in the October 6 edition of "The Garden Island." This court has heretofore stated in *Johnson v. Ing, supra,* that in the circumstances of that case, of course, a period of slightly more than one week is "ample time" in which to judicially compel changes in an improper ballot. *Johnson v. Ing, supra* at 382, 140. Here, although they had a full month to register a complaint and to seek administrative and judicial relief, plaintiffs failed to take any kind of action. Instead, they chose to do nothing, and now inform this court that "even if the circuit court remedy had been considered, the Committee would probably have been reluctant to institute proceedings which could generate sufficient adverse publicity to prejudice the electorate prior to the election." In such a case, an action brought after the election is not timely, and plaintiffs will not be heard.

Moreover, the record before us clearly demonstrates that far from objecting to the changes in the ballot format, plaintiffs adopted the very language now complained of as their campaign slogan, and urged voters to "VOTE ☒ FOR LOW-RISE KAUAI" and "TO VOTE *FOR* SHOK, VOTE *FOR* THE INITIATIVE PROPOSITION."

Even if we were not to find Plaintiffs' action barred, however, we find they have failed to demonstrate malconduct on the part of election officials or impropriety in the ballot format sufficient to require that the election be invalidated.

Plaintiffs first contend that the ballot itself is so unclear and misleading as to be improper. A ballot, to be sufficient, must neither mislead nor advocate a position, but must simply state question clearly. *Kahalekai v. Doi, supra*. Section 1.07D of the initiative and referendum article of the Kauai County Charter further provides:

> The ballot for such measure shall contain an objective summary of the substance of the measure and shall have

below the ballot title designated spaces in which to mark a
ballot For or Against the measure.

An examination of the ballot included in the record before us
shows that the language is clearly within those bounds of
clarity and objectivity required by law. To reiterate what we
recently stated in *Kahalekai v. Doi,* "In no sense can it
reasonably be said that the voter was likely to be mislead by
the ballot language." 60 Haw. 318, 590 P.2d 550. Plaintiffs'
contention to the contrary is without merit.

Plaintiffs' next claim is that the failure of Defendant
Miura to permit them to view the ballot layout after the
wording had been changed from "Yes"–"No" to "For"–
"Against" as required by Section 1.07D *supra,* was in derro-
gation of HRS § 11-116 and therefore requires that the elec-
tion be invalidated. We disagree.

HRS § 11-116 reads:

Facsimilies of all ballot layouts prior to printing shall
be available for viewing by the candidates and the parties
at the office of the chief election officer and the county
clerk as soon after the close of filing as they are available.
Such layout facsimilies shall show the type faces used,
the spelling and placement of names, and other informa-
tion on the ballot.

A cursory reading of the statute shows that HRS § 11-116 does
*not,* as alleged by Plaintiffs, require approval of the ballot
layout, but requires only that an opportunity to view the ballot
facsimile be permitted. The purpose of the section is clearly
to put interested parties on notice so that steps may be taken
as soon as possible to correct any errors in the ballot. *See
Johnson v. Ing, supra.* The ballot format, including the man-
ner in which the voter may express assent or dissent certainly
can be of such import as to require its inclusion in the viewing.
*See* for example *Harvey v. Cook County,* 221 Ill. 76, 77 N.E.
424, 426 (1906). In that case the ballot read:

| For extension of the Torrens Land title system | Yes | |
|---|---|---|
| Against extension of the Torrens land title system | No | |

In holding the format impermissible, the court said:

> A vote in the blank opposite the word "Yes" would clearly have been a vote in the affirmative, while a vote opposite the word "No" would at most be nothing more than an expression of the voter that he was not against the extension of the Torrens land title system. There was no clear and unmistakable way of voting against this proposition. 77 N.E. at 427.

In the instant case, however, Plaintiffs not only had an opportunity to view the initial ballot layouts, but they expressed their approval of the manner in which the question was presented. Plaintiffs contend, however, that HRS § 11-116 requires that their approval be obtained again after the ballot had been changed. Under the circumstances of this case, we disagree. The change in the ballot format was made in order to assure compliance with Section 1.07D of the Kauai County charter provision on initiative and referendum, and modified only the manner in which approval or disapproval could be demonstrated by the voter, as both "yes" and "for" indicate assent, and "no" and "against" signify dissent. The change, therefore, cannot be deemed to have been substantive.

Further, as a general rule, an election will not be invalidated for failure of the election officials to comply strictly with an election statute where there has been substantial compliance and there is no showing of fraud. *Martin v. Porter, supra; see also Citizens for Referendum v. City of Worcester*, 375 N.E.2d 721 (Mass. 1978); *Wright v. Board of Trustees of Tatum Ind. Sch. Dist.*, 520 S.W.2d 787 (Tex. Civ. App. 1975); *City of Keene v. Gerry's Cash Market, Inc.*, 113 N.H. 165, 304 A.2d 873 (1973). Here, plaintiffs viewed and approved the initial ballot layout, which we have found was not substantially changed. Further, they had one month in which to register any complaints and to take appropriate action after being informed of the change in the format.

As there was no substantive change in the ballot form and there was substantial compliance with the provisions of HRS § 11-116, the outcome of the election is upheld.

*Michael R. Salling* and *Lehua Fernandes Salling* (*Fernandes Salling & Salling,* of counsel) for plaintiffs.

*Michael J. Belles,* Deputy County Attorney *(Morris Shinsato,* County Attorney, of counsel) for defendants Tad T. Miura and Office of the Kauai County Clerk.

*Michael S. Glass,* Deputy Attorney General *(Ronald Amemiya,* Attorney General, of counsel) for defendants Lieutenant Governor and Chief Election Officer of the State of Hawaii.