**WILMINGTON CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellant,**

v.

**BOARD OF COMMISSIONERS OF CLINTON COUNTY et al., Appellees.**

[Cite as *Wilmington City School Dist. Bd. of Edn. v. Clinton
Cty. Bd. of Commrs.* (2000), 141 Ohio App.3d 232.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

No. CA99–12–037.

Decided June 5, 2000.

Means, Bichimer, Burkholder & Baker Co., L.P.A., and *Robert M. Morrow*, for appellant.

*William E. Peelle*, Clinton County Prosecuting Attorney, and *Thayne D. Gray*, Assistant Prosecuting Attorney, Wilmington, for appellees, Clinton County Board of Commissioners et al.

*Daniel J. Buckley, Carol Mahaffey* and *Mary C. Henkel*, for appellee, ABX Air, Inc.

*Roger J. Makley* and *Dina M. Cary*, for appellee, Miller–Valentine Partners, Ltd.

WILLIAM W. YOUNG, Judge.

Plaintiff-appellant, the Wilmington City School District Board of Education ("School Board"), appeals the decision of the Clinton County Court of Common Pleas dismissing its complaint for declaratory relief against defendants-appellees, Clinton County Board of Commissioners ("Commissioners"), Ken Schaublin, County Housing Officer, Wanda E. Armstrong, County Auditor, Joyce A. Atley, County Treasurer, Miller–Valentine Partners, Inc. ("Miller–Valentine"), and ABX Air, Inc. ("ABX Air").

On April 21, 1988, the Commissioners adopted Resolution No. 88–216, establishing a community reinvestment area ("CRA") pursuant to R.C. 3735.65 *et seq.* The CRA was located in an unincorporated area of Clinton County outside the city of Wilmington, but within the Wilmington City School District. Owners of property within the CRA could apply for seven-year exemptions from real property taxes. The county housing officer was responsible for approving tax exemptions.

In October 1992, ABX Air petitioned the city of Wilmington to annex 47.876 acres of the land located in the CRA. On October 14, 1992, the Wilmington City Council ("City Council") approved the application for annexation. On January 7, 1993, the City Council adopted Ordinance No. 3379, completing the annexation of the CRA property. On August 5, 1993, the City Council adopted the CRA as a municipal CRA in Resolution No. 1111. The county housing officer was responsible for approving applications for exemptions within the annexed CRA.

On October 23, 1992, immediately after the City Council approved the application for annexation, Miller–Valentine applied for two tax exemptions. The county housing officer approved the tax exemptions that same day. Following the passage of Ordinance No. 3379, ABX Air and Miller–Valentine continued to apply for tax exemptions, all of which were granted. In both cases, the School Board allegedly was not notified of or given the opportunity to comment upon the applications pursuant to former R.C. 5709.83.[1]

On July 10, 1998, the School Board filed a complaint seeking a declaratory judgment that failure to follow former R.C. 5709.83 invalidated the granted tax exemptions. The school board also sought an order directing Armstrong, as County Auditor, to add the value of the contested properties to the tax rolls, and assess and collect the taxes that would have been levied if no tax exemptions had been granted. The School Board further sought a declaration stating that county officials had no jurisdiction to grant tax exemptions within the annexed CRA. ABX Air and Miller–Valentine were named defendants because they own the subject properties.

Appellees timely answered. ABX Air and Miller–Valentine also moved to dismiss the complaint, contending that the School Board did not have standing to bring the suit. On April 26, 1999, the trial court overruled the motions to dismiss.

ABX Air requested that the trial court reconsider its decision. On July 23, 1999, the trial court filed a second decision, finding that the school district lacked standing to challenge tax exemptions granted before July 22, 1994, when R.C.

---

1. The statutory scheme for creating CRAs and approving applications for tax exemptions within CRAs was amended by Am.Sub.S.B. No. 19 ("S.B.19"), effective July 22, 1994. Under the amended statutory scheme, boards of education are given the power to approve or disapprove applications for tax exemptions and agreements between the property owner and the legislative authority for tax exemptions. R.C. 3735.671. Prior to S.B. 19, only R.C. 5709.83 governed the role of boards of education regarding the approval of applications for tax exemptions within CRAs, and that role was more limited than under the new provisions. Section 3 of S.B. 19 was a "grandfather" clause, providing that the amended statutory scheme applied only to CRAs and tax exemption applications within CRAs established on or after July 22, 1994. The CRA in the instant case was established long before July 22, 1994, thus we are concerned only with the pre-S.B. 19 statutory scheme.

5709.83 was amended by Am.Sub.S.B. No. 19. The trial court found that the pre-S.B. 19 statutory scheme did not grant the School Board a vested right upon which it could base a declaratory judgment action.

ABX Air requested that the trial court reconsider its second decision. On October 8, 1999, the trial court filed a third decision, finding that the School Board lacked standing to challenge any of the contested tax exemptions. The trial court found that S.B. 19, Section 3, precluded the School Board from having any vested right upon which it could base a suit. A final appealable judgment entry was filed on November 18, 1999. The School Board appeals, raising a single assignment of error:

"The trial court committed error in dismissing this action on the grounds that the Wilmington City School District Board of Education lacks standing to bring this action for declaratory relief."

In its assignment of error, the School Board contends that the trial court erred by finding that the School Board did not have standing to challenge appellees' alleged failure to comply with former R.C. 5709.83. The School Board also seeks to argue the merits of its declaratory judgment action. As the trial court addressed only the issue of standing in its decisions, we limit our discussion to that issue.

To dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6), "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. A complaint should not be dismissed merely because the factual allegations contained in the complaint do not support the legal theory on which the plaintiff relies. The court must examine the complaint to determine if the allegations provide for relief on any possible theory. *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 667, 653 N.E.2d 1186, 1187–1188. The court must presume that all factual allegations in the complaint are true and construe all inferences that may be reasonably drawn therefrom in favor of the nonmoving party. *Bridges v. Natl. Eng. & Contracting Co.* (1990), 49 Ohio St.3d 108, 112, 551 N.E.2d 163, 167–168.

Declaratory judgment actions may be brought pursuant to R.C. 2721.03:

"Subject to division (B) of section 2721.02 of the Revised Code, *any person* interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the

instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it." (Emphasis added.)

"Person" is defined in R.C. 2721.01:

"As used in this chapter, 'person' means any person, partnership, joint-stock company, unincorporated association, society, municipal corporation, or other corporation."

The status of a board of education as a "person" or party capable of bringing suit under R.C. 2721.03 was discussed in *Bright Local School Dist. Bd. of Edn. v. Hillsboro School Dist. Bd. of Edn.* (1997), 122 Ohio App.3d 546, 702 N.E.2d 449, wherein the court ultimately concluded that "a board of education is a 'person' for purposes of R.C. Chapter 2721 and is authorized to bring a declaratory judgment action." *Id.* at 552, 702 N.E.2d at 453. That court reviewed the quasi-municipal corporate nature of boards of education, see *Brown v. Monroeville Bd. of Edn.* (1969), 20 Ohio St.2d 68, 49 O.O.2d 347, 253 N.E.2d 767, and R.C. 3313.17, which provides in part that boards of education are "bod[ies] politic and corporate, and, as such, capable of suing and being sued." *Bright Local School Dist.*, 122 Ohio App.3d at 551–552, 702 N.E.2d at 453.

■■ Having determined that, in general, the School Board is empowered to bring a declaratory judgment action, we consider whether the School Board has standing to challenge the tax exemptions granted within the CRA. Standing depends upon whether the challenging party has a " " "personal stake in the outcome of the controversy." ' " *Middletown v. Ferguson* (1987), 25 Ohio St.3d 71, 75, 25 OBR 125, 129, 495 N.E.2d 380, 384, certiorari denied in *Sticklen v. Middletown* (1987), 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 837, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636. This ensures that " 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' " *Id.* at 732, 92 S.Ct. at 1364, 31 L.Ed.2d at 641.

■ A party has standing where the party demonstrates an injury in fact. An injury in fact requires a showing that the party has suffered or will suffer a specific injury, that the injury is traceable to the challenged action, and that it is likely that the injury will be redressed by a favorable decision. *Eng. Technicians Assn. v. Ohio Dept. of Transp.* (1991), 72 Ohio App.3d 106, 110–111, 593 N.E.2d 472, 474–475, jurisdictional motion overruled (1991), 61 Ohio St.3d 1412, 574 N.E.2d 1076. In the context of the instant case, the School Board has standing to challenge the granted tax exemptions only if boards of education are given a right to participate in the application approval process by former R.C. 5709.83.

Appellees contend that the School Board may not attack the failure to provide notice of the applications because former R.C. 5907.83 does not give boards of education a right to participate in the application process. In essence, appellees assert that the statute is merely directory, and a violation of the statute does not give rise to a cause of action. The School Board contends otherwise, arguing that R.C. 5709.83 is a mandatory statute, which may be enforced through a declaratory judgment action.

When construing a statute, the paramount concern is the legislature's intent in enacting the statute. *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351, 1353. A court must first look to the language and purpose of the statute to determine the legislative intent. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319, 1322–1323. Words and phrases must be read in context and construed according to the rules of grammar and common usage. R.C. 1.42[2]; *Independent Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817. A statute that is plain and unambiguous and definite on its face must be applied as written. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995, 997–998. There is a presumption that every word in the statute is designed to have some legal effect, and every part of the statute must be regarded where practicable so as to give effect to every part of it. See *Richards v. Market Exchange Bank Co.* (1910), 81 Ohio St. 348, 363, 90 N.E. 1000, 1003.

Where a statute contains the word "shall," the provision generally will be construed as mandatory. *In re Davis* (1999), 84 Ohio St.3d 520, 522, 705 N.E.2d 1219, 1221–1222. A mandatory statute is one where noncompliance renders any proceedings to which it relates illegal and void. *Id.*, citing *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 471–472, 32 O.O. 542, 543–544, 66 N.E.2d 531, 534. A statute may be found to be directory or discretionary, rather than mandatory, where it concerns only a time for performance, where the statute fixes the time for performance "simply for convenience or orderly procedure." *Id.* at 472, 32 O.O. at 544, 66 N.E.2d at 534. Even though a statute concerns only the time for performance, it may be mandatory where its phraseology is such that " 'the designation of time must be considered a limitation upon the power of the officer.' " *Davis,* 84 Ohio St.3d at 522, 705 N.E.2d at 1223, quoting *State ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, 255, 142 N.E. 611, 613.

---

**2.** R.C. 1.42 provides:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

The use of "shall" in a statute is more likely to be mandatory where the statute concerns the substance, not the timeliness, of an act. As a general rule, "statutes which relate to the essence of the act to be performed are matters of substance, and are mandatory; those which do not relate to the essence, compliance with which is merely a matter of convenience rather than substance, are directory." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 163–164, 51 O.O.2d 229, 230, 258 N.E.2d 429, 431–432, citing *Farrar*, 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, at paragraph two of the syllabus. The nature of the statute must be ascertained by considering the language of the entire statute, its nature, context and object, the consequences which would result from construing it one way or another, and the importance of the allegedly disregarded provision. *Id.* at 472–473, 32 O.O. at 544–545, 66 N.E.2d at 534–535; *Martin v. Porter* (C.P.1976), 47 Ohio Misc. 37, 42, 1 O.O.3d 363, 366–367, 353 N.E.2d 919, 923. Where the statute directs that an act be done in a certain way and indicates that compliance with the provision is essential to the validity of the act, or where it requires antecedent and prerequisite conditions to the exercise of a power, the statute is mandatory. *Farrar*, 146 Ohio St. at 472–473, 32 O.O. at 544–545, 66 N.E.2d 531.

Powers of a school district board of education are conferred by R.C. 3313.17.[3] *Brown*, 20 Ohio St.2d at 72, 49 O.O.2d at 349–350, 253 N.E.2d at 769–770. We must determine whether former R.C. 5709.83 granted the School Board additional power incident to these powers.

Unlike the present statutory scheme, the role of boards of education under the former statutory scheme governing CRA tax exemptions was more limited. Former R.C. 5709.83 provided:

"Prior to taking formal action to adopt or enter into any instrument granting a tax exemption under section 725.02, 1728.06, 5709.62, 5709.63, 5709.73, or 5709.84 of the Revised Code, or prior to forwarding an application for a tax exemption under section 3735.67 of the Revised Code to the county auditor, the legislative authority of the political subdivision or housing officer shall notify the board of education of each school district in which the proposed tax-exempted property is located. The notice shall include a copy of the instrument or application. The notice shall be delivered at a time and in a manner that provides for comment on the instrument or application by the board of education to the legislative

---

3. R.C. 3313.17 provides:

"The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued, contracting and being contracted with, acquiring, holding, possessing, and disposing of real and personal property, and taking and holding in trust for the use and benefit of such district, any grant or devise of land and any donation or bequest of money or other personal property."

authority, before the legislative authority takes formal action to adopt or enter into the instrument, or to the housing officer before the housing officer forwards the application to the county auditor. If the board of education comments on the instrument or application to the legislative authority or housing officer, the legislative authority or housing officer shall consider the comments." See 144 Ohio Laws, Part II, 2642, 2659.

The above statute is part of the process for granting an owner of land within a CRA an exemption from property taxes that the county may otherwise levy and collect pursuant to R.C. 5705.03. These exemptions may deprive the board of education, as a tax revenue recipient, of a portion of the tax revenue that would otherwise be collected and distributed. The legislature balanced this potentially harsh result by allowing boards of education and legislative authorities to enter into agreements to compensate them for the lost tax revenue not collected. R.C. 5709.82(B).

▮▮▮ Had the General Assembly intended that boards of education be left out of the decision-making process, there would have been no need to enact former R.C. 5709.83. Instead, the statute requires that boards of education be given a specific form of notice of the application for a tax exemption before any action is taken regarding the application. Boards of education must be given the opportunity to comment on the application, and the legislative authority or housing officer must consider that comment. The statute is clear and unequivocal. Although boards of education do not have the power to deny an application, the statute requires that they be permitted to provide input concerning tax exemptions that would deprive them of revenues.

Nothing in former R.C. 5709.83 indicates that any discretion is given to the legislative authority or housing officer concerning whether to follow the provisions of the statute. It is evident that boards of education are participants in the approval process. Boards of education are given the express power to comment upon applications for tax exemptions under R.C. 3735.67 and have their comments considered.

Appellees contend that the School Board is not empowered to bring the present action because it concerns past taxes that were neither levied nor collected. Appellees are correct that the School Board has no vested interest in taxes that are not levied, collected, or distributed from a general fund. *Cleveland v. Zangerle* (1933), 127 Ohio St. 91, 92–93, 186 N.E. 805, 805–806. However, in its complaint the School Board seeks *both* to void the exemptions *and* to have past taxes levied and collected. Even though the School Board cannot seek to receive past unlevied taxes, it may still seek to enforce the rights granted by former R.C. 5709.83.

The trial court properly dismissed the part of the School Board's complaint seeking to recover past unlevied, uncollected taxes. However, the trial court erred by finding that the School Board lacks standing to bring a declaratory judgment action to void the challenged tax exemptions based upon failure to comply with former R.C. 5709.83. The assignment of error is sustained in part and overruled in part.

Judgment of the trial court is affirmed in part, reversed in part, and remanded.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WALSH, J., concurs.

POWELL, P.J., dissents.

POWELL, Presiding Judge, dissenting.

For the reasons stated in the decision of the trial court, I would affirm.