OPINION
{¶ 1} Jefferson Township Local Schools Board of Education ("Jefferson") appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the City of Moraine ("Moraine") and 4100 Caylor Road, LLC ("Caylor"), on its claim that Moraine had impermissibly expanded Community Reinvestment Area No. 1 ("CRA No. 1") and had impermissibly given Caylor a fifteen-year tax abatement, to Jefferson's detriment.
 {¶ 2} The following facts are undisputed:
 {¶ 3} On September 28, 1978, Moraine created CRA No. 1 through Resolution No. 1268. On May 13, 1999, CRA No. 1 was amended by Resolution No. 4690-99. That resolution expanded the boundaries of the reinvestment area and implemented new rules, regulations and classifications. Sometime after the adoption of Resolution No. 4690-99, Moraine discovered that the modified boundaries omitted property that was intended to be included in the boundaries of CRA No. 1, specifically, the property known as 4100 Caylor Road. In an effort to correct the oversight, on January 22, 2001, Philip B. Herron, Law Director for the City of Moraine, sent correspondence to the Ohio Department of Development, notifying them of the error and providing the intended boundaries of CRA No. 1.
 {¶ 4} In 2001, Miller Valentine Partners, Ltd., purchased the property located at 4100 Caylor Road. On September 13, 2001, Moraine approved a tax abatement for new construction at that property. On January 24, 2002, Moraine adopted Resolution No. 5287-02, which granted Miller Valentine a fifteen-year tax abatement. At some point, the ownership of 4100 Caylor Road was transferred to Caylor, a member of the Miller Valentine Group.[1] On April 3, 2002, Jefferson initiated the instant litigation against Moraine, Miller Valentine and the Montgomery County Auditor, seeking to enjoin the implementation of the tax abatement granted to Miller Valentine. The complaint alleged that Moraine could not administratively amend CRA No. 1 by means of Herron's correspondence and, therefore, Miller Valentine was not entitled to the abatement. In an amended complaint, Caylor was substituted for Miller Valentine. Caylor filed a cross-claim against Moraine, requesting damages in the event that the court found that Herron's correspondence did not administratively amend CRA No. 1 or Moraine failed to correct its error.
 {¶ 5} Moraine and Caylor filed motions for summary judgment against Jefferson. In its motion, Moraine argued that it was entitled to sovereign immunity, pursuant to R.C. Chapter 2744, and that Jefferson had no standing to receive past, unlevied taxes. Moraine further argued that R.C. Chapter 3735 does not prohibit administrative amendments, and that it could correct records of the city where errors were made through inadvertence. Caylor argued in its motion that the court should apply R.C. Chapter 2719, which concerns the correction of defects in instruments or proceedings, and should give legal effect to Herron's correspondence based on principles of equity. Caylor further argued the pre-1994 CRA statutory scheme applied and that, under those statutes, Moraine could amend CRA No. 1 without negotiations with Jefferson. Caylor also moved for summary judgment on its cross-claim against Moraine.
 {¶ 6} On February 27, 2003 (after the motions for summary judgment were filed), Moraine adopted Resolution No. 5457-03, which amended the legal description attached to Resolution No. 4690-99 to include the real estate known as 4100 Caylor Road.
 {¶ 7} The trial court granted Moraine and Caylor's motions against Jefferson. It concluded R.C. Chapter 3735 does not permit a CRA to be amended administratively and, thus, Herron's January 22, 2001, correspondence to the Ohio Department of Development had no legal effect. The trial court also found that R.C. Chapter 2719 was inapplicable to the situation before it. The court further reached the following conclusions:
 {¶ 8} "The Court need not consider any further the effect of any attempt to administratively amend the CRA, as the issue was resolved and the property at 4100 Caylor Road was included in CRA No. 1 when the Moraine City Council passed Resolution No. 5457-03 on February 27, 2003. The City Council made the survey of hous[ing] and all necessary findings as required by O.R.C.3735.66 in its Resolution. It is also not necessary for the Court to consider Defendant Moraine's claim of immunity, as Plaintiff has acknowledged that it is not seeking damages in the form of past unlevied taxes. The Court finds that the City of Moraine complied with all applicable requirements for the amendment of CRA No. 1. The Court further finds that there have been two amendments to CRA No. 1 and that the correspondence from Philip Herron did not constitute an amendment to that CRA."
 {¶ 9} Turning to whether the life of CRA No. 1 had been impermissibly extended beyond five years, the court concluded that it had not. It concluded that Herron's correspondence had no legal effect on the length of time for any tax abatement. The court further found that under the pre-1994 CRA statutes, which it applied because only two amendments had been made to CRA No. 1, Moraine was permitted to grant a tax abatement to Caylor for a period of fifteen years. Thus, it concluded that the fifteen-year tax abatement did not inappropriately extend the life of the CRA. Based on these conclusions, the court granted Moraine and Caylor's motions for summary judgment against Jefferson, and dismissed Jefferson's complaint. Based on its rulings on the summary judgment motions against Jefferson, it overruled as moot Caylor's motion regarding its cross-claim.
 {¶ 10} Jefferson appeals from the grants of summary judgment against it. Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See Stateex rel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181,183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 8 O.O.3d 73,375 N.E.2d 46.
 {¶ 11} Jefferson raises four assignments of error on appeal.
 {¶ 12} "1. The trial court erred as a matter of law by failing to find that defendant moraine had adopted three separate amendments and as a result improperly applied pre-1994 cra regulations."
 {¶ 13} Pursuant to R.C. 3735.66, municipalities and counties may adopt resolutions creating community reinvestment areas. Owners of real property within the CRA are permitted to apply for exemption from real property taxation. Because school districts rely upon property taxes as a source of funding, they are affected by the tax exemptions granted to such property owners. Prior to July 1994, boards of education had a limited role in the approval of applications for tax exemptions in CRAs. Under the former R.C. 5709.83, the legislative authority was required to give the board of education notice of the proposed tax exemption, and the school board could provide comments. See also former R.C.5709.82 (stating school board and legislative authority could negotiate and enter into an agreement to compensate the school board for lost revenue). Pursuant to amendments to the statutory scheme in Am.Sub.S.B. No. 19 ("Senate Bill 19"), which was effective July 22, 1994, boards of education now have the power to approve or disapprove applications for exemptions and agreements between the property owner and the legislative authority for tax exemptions. See R.C. 3735.671; Wilmington CitySch. Dist. Bd. of Educ. v. Board of Commrs. of Clinton Co.
(2000), 141 Ohio App.3d 232, 236 n. 1, 750 N.E.2d 1141. In general, the current version of R.C. 5709.82 requires, in part, that municipalities negotiate an agreement providing compensation to the school board for lost revenues due to the issuance of property tax exemptions in a CRA. However, section 3 of Senate Bill 19 provides that the amended statutory scheme (specifically R.C. 3735.67, 3735.671, 3735.672, 3735.673, and 3735.678) applies to CRAs created on or after July 22, 1994. As for CRAs created prior to that date, Senate Bill 19 generally allowed the legislative authority to amend the CRA twice after July 22, 1994, without having to comply with the regulations of Senate Bill 19.
 {¶ 14} Jefferson asserts that the trial court erred in finding that Herron's letter to the Ohio Department of Development had no legal effect and that Moraine had amended CRA No. 1 on two occasions rather than three. In arguing that Herron's letter constituted an amendment of CRA No. 1, Jefferson states that Moraine and Caylor "operated under the assumption that Herron's amendment was valid and both the Defendants received the economic benefits from Herron's action." In its reply memorandum, Jefferson explains its argument further:
 {¶ 15} "If Caylor is permitted to keep the tax savings it received, then the letter must be considered an amendment, since it had the legal and practical effect that an amendment would have had, and failing to undo those effects acts as a ratification of the unlawful granting of an exemption to Caylor. The resolution No. 5457-03 in effect ratified this unlawful act, and was therefore the third amendment." Jefferson asserts that because Herron's letter constituted an amendment, Resolution No. 5457-03 was a third amendment, thus triggering the post-1994 CRA regulations.
 {¶ 16} In response, Caylor asserts the January 22, 2001, correspondence was not an amendment but, rather, "an attempt to correct an administrative error that occurred in the first amendment to CRA No. 1 in 1999." Moraine emphasizes that the correspondence and Resolution No. 5457-03 encompass the exact same amendment. Moraine argues:
 {¶ 17} "If this Court agrees with the trial court that Herron's January 22, 2001 letter did not administratively amend the CRA, then Resolution No. 5457-03 represented the second amendment to CRA 1, and the pre-1994 regulations still apply. If this Court disagrees with the trial court and finds that Herron's January 22, 2001 letter did administratively amend CRA 1, then Resolution No. 5457-03 is rendered moot because it has the identical effect of Herron's letter. As such, Herron's letter would be the second and final effective amendment to date. As a result, pre-1994 regulations should still apply."
 {¶ 18} Upon review of R.C. 3735.66, we agree with the trial court that administrative amendments are not permissible. R.C.3735.66 requires the legislative authorities to create CRAs by resolution and to set forth in those resolutions certain findings and a description of the boundaries of the CRA. Although the statute does not expressly address amendments to the resolutions, in our judgment, the statute does not permit the municipality or county to alter the boundaries of the CRA without formal legislative action or findings that the amended area met the conditions to be included in a CRA. The legislature certainly did not intend for CRA boundaries to be altered by a non-elected employee of a municipality. Because Herron could not administratively amend Resolution No. 4690-99, we agree that Herron's correspondence was of no legal effect.
 {¶ 19} Moreover, we find Moraine's argument to be persuasive. Regardless of whether Herron's correspondence constituted an amendment of CRA No. 1 (although based on a reading of R.C. Chapter 3735, we agree with the trial court that it cannot), we find no fault with the trial court's conclusion that only two amendments have been made to RCA No. 1. It is undisputed that RCA No. 1 was amended for the first time on May 13, 1999, when the boundaries of the area were expanded. Even if we were to assume that administrative amendments are permissible under the statute, upon comparing Herron's correspondence and Resolution No. 5457-03, we conclude that only one of those actions effectuated an amendment of Resolution No. 4690-99. Both the letter and the 2003 resolution sought to expand the boundaries set forth in Resolution No. 4690-99. Herron's correspondence indicated that a parcel of property which was included in the annexation of property into Moraine was inadvertently omitted from the legal description and map attached to Resolution No. 4690-99. The correspondence provided the Ohio Department of Development with a corrected description and map. Resolution No. 5457-03 repealed the legal description attached to Resolution No. 4690-99, and it ordered that the originally intended legal description, which included the 4100 Caylor Road property, be attached to Resolution No. 4690-99 and made a part thereof. Resolution No. 5457-03 reaffirmed Resolution No. 4690-99 in all other respects. The corrected legal description of CRA No. 1 as set forth in Herron's letter is identical to the legal description of CRA No. 1 in Resolution No. 5457-03. Thus, Resolution No. 5457-03 and Herron's letter each sought to make identical changes to Resolution No. 4690-99. Without any differences between in the changes intended by Herron's correspondence and those in Resolution No. 5457-03, we would be hard-pressed to conclude that one was an amendment of the other.
 {¶ 20} In addition, even if Resolution 5457-03 ratified Moraine's unlawful actions in granting Caylor an exemption, we do not find three amendments to have been made to CRA No. 1, as argued by Jefferson. Suffice it to say, if a ratification was necessary to effectuate the intended amendment and tax exemption, Herron's letter could not itself be an amendment. Rather, under that scenario, Resolution No. 5457-03 was the second amendment to CRA No. 1.
 {¶ 21} In summary, we conclude, as a matter of law, that Moraine made two amendments to CRA No. 1. Because CRA No. 1 had not been amended more than twice, Moraine was not required to comply with post-1994 CRA regulations.
 {¶ 22} Jefferson's first assignment of error is overruled.
 {¶ 23} "2. The trial court erred as a matter of law in finding defendant moraine complied with O.R.C. § 3735.66
regarding resolution 5457-03, adopted on February 27, 2003."
 {¶ 24} In its second assignment of error, Jefferson claims that the trial court erred in finding that Moraine had made the necessary statutory findings prior to adopting Resolutions No. 4690-99 and 5457-03. Jefferson contends that the record is devoid of any evidence that Moraine made any findings that the property was economically depressed prior to adopting Resolution No. 4690-99. In addition, Jefferson asserts that the record contains no evidence that Moraine made any findings that the area represented by 4100 Caylor Road was economically depressed at the time that it was added to CRA No. 1 and that without such a finding, the inclusion of that property in a CRA is improper. In particular, Jefferson states that the $309,000 purchase price of the property is inconsistent with the conclusion that new construction and rebuilding were "discouraged."
 {¶ 25} R.C. 3735.65(B) defines a "community reinvestment area" as:
 {¶ 26} "an area within a municipal corporation * * * for which the legislative authority of the municipal corporation * * * has adopted a resolution under section 3735.66 of the Revised Code describing the boundaries of the area and containing a statement of finding that the area included in the description is one in which housing facilities or structures of historical significance are located and new housing construction and repair of existing facilities or structures are discouraged."
 {¶ 27} As stated above, in order to create a community reinvestment area, a municipal corporation must conduct a survey of the housing within its jurisdiction and, after the survey, adopt a resolution describing the boundaries of the area which contains the conditions required to meet the definition of a CRA, as set forth in RC. 3735.65(B). R.C. 3735.66. The resolution must include the findings resulting from the survey. Id.
 {¶ 28} Resolution No. 4690-99 contains the following findings:
 {¶ 29} "WHEREAS, this Council has made a survey of housing in the City of Moraine as specified in Section 3735.66 of the Ohio Revised Code and desires to pursue all reasonable and legitimate measures to assist in encouraging housing and commercial property maintenance and economic and community development in areas that have not realized reinvestment by remodeling or new construction; and
 {¶ 30} "WHEREAS, the remodeling, maintenance and/or new construction of certain residential, commercial and industrial structures in such areas would serve to encourage economic stability, maintain real property values, and generate new employment opportunities; and
 {¶ 31} "WHEREAS, this Council has previously established Community Reinvestment Area No. 1 by Resolution No. 1268, and now desires to expand the boundaries and implement new rules, regulations and classifications as set forth herein.
 {¶ 32} "Now, therefore, be it resolved by the council of the City of Moraine, State of Ohio:
 {¶ 33} "Section 1: That this Council finds that the area to be included within Community Reinvestment Area No. 1 is one in which housing facilities or structures of historical significance are located and new housing construction and repair of existing facilities or structures are discouraged." * * *
 {¶ 34} On its face, Resolution No. 4690-99 indicates that Moraine complied with the statutory requirements and made the requisite findings. As argued by Caylor, Jefferson has not directed us to any evidence that Moraine acted improperly when passing this resolution. Accordingly, we find no genuine issue of material fact as to whether Moraine complied with R.C. 3735.66
when adopting Resolution No. 4690-99.
 {¶ 35} Turning to Resolution No. 5457-03, the resolution states that "Resolution No. 4690-99 * * * was intended to amend the boundaries of Community Reinvestment Area No. 1 (CRA) as a result of an annexation of property into the City." It further states that "it was in the intent of the City Council when it passed Resolution No. 4690-99 to include all the property annexed by the City, including the area inadvertently omitted" and that the intent of Resolution No. 5457-03 was "to correct such error and to ensure that all of the property annexed by the City is correctly included in the boundaries of CRA-1." After modifying the legal description of the boundaries of CRA No. 1, Resolution No. 5457-03 resolved "[t]hat in all other respects the provisions of Resolution No. 4690-99 passed May 13, 1999 are hereby reaffirmed and remain in full force and effect as originally intended."
 {¶ 36} Although Resolution No. 5457-03 did not make any specific findings that the area represented by 4100 Caylor Road was economically depressed or "discouraged," Resolution No. 5457-03 adopts the findings from Resolution No. 4690-99. Resolution No. 5457-03 clearly indicates that 4100 Caylor Road was intended to be included in the boundaries of CRA No. 1 at the time that Resolution No. 4690-99, and therefore the findings in Resolution No. 4690-99 are equally applicable to that parcel of real property. Construing the evidence in the light most favorable to Jefferson, we find nothing improper in the method by which Resolution No. 5357-03 was adopted.
 {¶ 37} Jefferson's second assignment of error is overruled.
 {¶ 38} "3. The trial court erred as a matter of law by granting defendants moraine and caylor's motions for summary judgment where genuine issues of material fact exist regarding the amount of damages plaintiff is entitled to receive."
 {¶ 39} Jefferson asserts that genuine issues of material fact exist as to the amount of damages that it suffered as a result of Caylor receiving a tax exemption to which it was not entitled. Specifically, Jefferson states that if Herron's correspondence had no legal effect, Caylor received a tax exemption for more than one year (until Resolution No. 5457-03 was adopted) when it was technically not a part of CRA No. 1.[2] Both Moraine and Caylor respond that Jefferson had previously asserted that it was not seeking to recover past, unlevied taxes and that it cannot appeal on an issue that it had waived. Moraine adds that inWilmington, supra, the court held that a school board "has no vested interest in taxes that are not levied, collected, or distributed from a general fund." Wilmington,141 Ohio App.3d at 241, citing Cleveland v. Zangerle (1933), 127 Ohio St. 91,92-93, 186 N.E. 805. Moraine also claims that even if Jefferson could seek recovery for past, uncollected tax revenues, it is entitled to immunity pursuant to R.C. 2744.02.
 {¶ 40} In its reply brief, Jefferson argues that it "could not anticipate the court ruling which essentially found that no legal amendment existed until February 2003 — but excused the appellee's prior conduct of not paying taxes." Jefferson states that it indicated that it would not seek retroactive relief "in anticipation of an `all or nothing' ruling from the court." Jefferson also attempts to distinguish Wilmington, stating that the post-1994 statutes apply herein and that Caylor was receiving a tax exemption to which it was not legally entitled.
 {¶ 41} As noted by Moraine and Caylor, Jefferson expressly stated in its memorandum in opposition to Moraine's summary judgment motion: "Jefferson does not seek to recover past taxes, rather, Jefferson seeks to preserve prospective revenues generated from the improper tax abatement provided to Caylor." (emphasis in original). By this statement, Jefferson has waived its claim for damages that allegedly resulted from the improper tax abatement to Caylor. We find little merit in Jefferson's argument that it could not anticipate the trial court's ruling.
 {¶ 42} Jefferson's third assignment of error is overruled.
 {¶ 43} "4. The trial court erred as a matter of law by failing to find that defendant moraine had impermissibly extended the life of cra no. 1 beyond five years through three separate amendments."
 {¶ 44} Jefferson contends that Herron's correspondence and Resolution No. 5457-03, coupled with the fifteen-year tax abatement granted to Caylor, impermissibly extended the life of CRA No. 1 beyond five years. Jefferson presumably relies upon Senate Bill 19 § 3(B), which "grandfathers" the first two amendments to a resolution, including amendments which "grant an extension of the date after which the granting of tax exemptions may be terminated pursuant to the provisions of such resolution or ordinance, provided each such extension does not exceed five years. . . ."
 {¶ 45} Moraine responds that Herron's letter and Resolution No. 5457-03 sought to change the boundaries of CRA No. 1, not extend the life of the CRA. The city further states that CRA No. 1 and the former R.C. 3735.67 permitted fifteen-year tax exemptions, and that the pre-1994 statutes did not prohibit extending a CRA beyond five years. In its response, Caylor argues that if pre-1994 requirements apply, Jefferson's argument must fail. Caylor argues that the pre-1994 statutes and CRA No. 1 provided that tax exemptions could be granted to structures within a CRA for a period not to exceed fifteen years and thus its fifteen-year exemption fell within the statutory limits.
 {¶ 46} As discussed above, we agree with the trial court that only two amendments were made to CRA No. 1. Both of those amendments altered only the boundaries of CRA No. 1; they did not seek to "extend the life" of CRA No. 1 by amending the "date after which the granting of tax exemptions may be terminated." Because Resolution No. 5457-03 only amended the boundaries of CRA No. 1, the trial court properly found that Moraine had not impermissibly extended the life of CRA No. 1 beyond five years through that amendment and through Herron's ineffective correspondence. We further agree with the trial court that the pre-1994 statutory scheme is applicable herein and that, under the former R.C.3735.67 and CRA No. 1, Moraine could grant a fifteen-year real property tax exemption. The fifteen-year tax exemption had no bearing on the "life" of CRA No. 1.
 {¶ 47} The fourth assignment of error is overruled.
 {¶ 48} The judgment of the trial court will be affirmed.
Brogan, J., and Grady, J., concur.
[1] Based on the record, it is unclear when ownership of the 4100 Caylor Road property was transferred to Caylor, a member of the Miller Valentine Group. However, it is clear from the affidavits of Todd Duplain and Steve Koewler, both employees of Miller Valentine, and from the October 2, 2001, correspondence from Michael Davis, the Economic Development Director/Housing Officer for Moraine, to Linda M. Clauttl, Superintendent of Jefferson, that Miller Valentine applied for the fifteen-year 100% tax exemption. We further note that in several submissions to the trial court, Caylor referred to itself as Miller Valentine. (See, e.g., Doc. #32, Doc. # 48)
[2] Jefferson states that, assuming that Herron's correspondence did not amend Resolution No. 4690-99, it incurred damages between May 13, 1999, and February 27, 2003. However, according to the record, Caylor did not receive any tax abatements until September 13, 2001, when Moraine approved a tax abatement for certain new construction. Moraine approved the fifteen-year tax abatement for Caylor on January 24, 2002, when it adopted Resolution No. 5287-02.